Michael Kramer, CREA I think I have fully briefed Mr. Scott's positions. If there is any questions that the Court has, I'm happy to respond. Otherwise, I'd like to reserve my time and fruit a bottle. That's not appropriate. I apologize.  Very well, Your Honor. Respondents concede that they didn't file their motion for sanctions until 22 days after their motion for sanctions was served. I'd like to know. To me, it's not leading anywhere because, in the end, you had the time to make an offer or to remove the case before the time ran and you didn't do it. So I don't know what difference it makes. What difference does it make? It makes no difference. Assuming you're right about the timing. Yes, Your Honor. The hearing wasn't held until after the deadline had run. That's correct. And you had every opportunity to, if you were going to cave at that point, to cave. And you didn't cave. There was no cave. Is the Court referring to a possible waiver? It's not really a waiver. It's sort of a harmless error problem. I mean, even if they file too early, it didn't make a difference. Well, I think Mr. Scott's position is that the safe harbor rule is strictly construed and they blew the statute. I mean, they blew the safe harbor rule and they jumped again and filed too soon. All right. But what about the merits of the case? Why was this frivolous or not frivolous and or in bad faith or not in bad faith? I think you're right. In any event, in other words, it was the alternative holding that the BAPA firm, which is on inherent authority. Yes. So when you're answering, address both issues. It's not just rule 9011. Yes, Your Honor. Mr. Scott, when he was presented with this issue and when Mr. Fisher came to see him, Mr. Fisher was in a bind. And so was the debtor in this case. He'd been named in a lawsuit. There wasn't a lot of funds. He didn't have confidence in his attorney at the time. And he asked Mr. Scott to step in and help resolve the situation. At that time, Mr. Scott reviewed the case and he realized that the plaintiffs in the underlying case were seeking to recover against the debtor in this case, Fisher Financial Investments, FFI. And Mr. Fisher told Mr. Scott that he was going to be, that FFI would be filing bankruptcy and that he would be filing bankruptcy as well. Mr. Scott relied on those representations to him. And at that point, after the bankruptcy was filed, and the bankruptcy was not filed by Mr. Fisher. Sorry. The bankruptcy was not filed by Mr. Scott. After the bankruptcy had been filed, Mr. Scott then brought it for remand. And I think the brief cites several. You immediately got skeptical reception from Judge Russell. Yes, Your Honor. Motions for remand and sanctions and notice and everything else. Was there any effort to try and, part of this proceeding state court were already stayed with respect to the company. Isn't that right? That's correct. Okay. And so was there any effort on the part of Mr. Scott to seek for, as a new counsel, to ask for continuance? Anything in the state court? Not prior to the removal. So he just removed it as a way of delaying the proceedings, took it over to the bankruptcy court, and got landed into a barrage of questions about what the heck he was doing. And there's no doubt that that's how Judge Russell viewed it, Your Honor. And this is a review under abuse of discretion? As far as the sanction, that would be the case, Your Honor. But if I would, if the Court wouldn't mind, I'd like to address the inherent power. Go ahead. And if I was, if I was, if I was to be so bold as to predict what this Court might do, I would imagine that under the inherent power, there still has to be some notice given that the Court intends to move on the inherent power. So you don't want to, you're not defending the decision that this, there was something arguably removable here? You're just not defending it? I'm not, I'm not, I'm not, I am, I'm not defending, I believe that Judge Russell had the discretion to decide that it should be remanded back to the state court. I understand that, but that's not the question under the Rule 11 analog entirely. The question is, was it frivolous to remove it and or in bad faith? And you're not standing here and you're not defending that? I think given the circumstances that Mr. Scott dealt with at the time and given the information that he was told, I think an attorney in that position would feel that it would be appropriate to. Would you tell me why? That's what I'd like to know, why. What is the argument about even, even if he was, what is the arguably appropriate basis for removal even if it's ultimately wrong? That, that the, that the plaintiffs in the underlying action were seeking, seeking to, seeking assets that they were claiming belonged to the debtor and the debtor had filed plaintiffs. They were claiming it belonged to the debtor or belonged to Mr. Fisher? Belonged to the debtor. They were, they were, they were claiming that Mr. Fisher had taken assets away from FFI, who eventually was, who, who was the debtor, and that those assets would have belonged to the bankruptcy estate once, once they filed bankruptcy. FFI was not there. Was that some kind of alter ego theory or what? The underlying action, I, I, I, I, I don't, I don't recall right at this time what they, why they were claiming, but yes, they were, they were saying that Mr. Fisher had usurped assets that belonged to, to the debtor. Which had represented, didn't have any assets. But Mr. Scott didn't know that at that time. Okay. Just, just on the inherent power, Your Honor, I, I believe that one of the, one of the appropriate avenues at this point would be to remand this to Judge Russell for a determination, to allow, to allow Mr. Scott to address the inherent power and, and the sanction under the inherent, under the inherent power. All right. I'm confused about that. That was an alternative holding. If you don't prevail on the other holding, you lose anyway. Yes, Your Honor. So why would you want to go, what's, why would we send it back under inherent powers unless we concluded that it was not frivolous and or not in bad faith under 9011? Because under 9011, there needed to be a 21-day notice plus another three days for remand. Oh, so you're assuming that. Okay. I, I, I, I, I believe that's, that's the law. And yes, I am assuming that, Your Honor. Okay. Okay. Thank you. Good afternoon, Your Honors. Christy Yee on behalf of Appellee National Insurance and Asset Protection. Briefly, I just would like to comment that this has been a very long journey for, for us and that Judge Russell found as the trial judge in this case that there was no basis for the removal and issued an order-shortening clause that said that there was no basis for the removal and issued an order-shortening clause that said that there was no basis for the removal and issued an order-shortening clause shortly after the removal because as he put it. Well, the problem is that no one has really explained that ruling to us or at least in a way that I understand because it's my understanding that there is bankruptcy jurisdiction over some variety of related to claims. Here you have a bunch of interrelated companies and individuals. There's an allegation that Fisher, that the debtor here was actually an alter ego of Fisher. Was it really completely nuts to think that there might be a reason to be adjudicating this in bankruptcy court so that the relationship between whether Fisher actually had walked off with assets of this entity and ought to be putting them back into the company for purposes of this litigation? I mean, it turns out to be wrong, but is it crazy? Well, I think that the bankruptcy judge who's very experienced and handles a lot of these types of matters saw immediately that there were circumstances that raised red flags. And I think that's what he thought, but I want to know if he's legally right. I believe so. That's what nobody seems to be engaging with. They're just talking about red flags, but they're not really analyzing the law. Well, I think that the law was analyzed with respect to the motion for remand. And under that motion, it was fully briefed as far as the court not having jurisdiction, subject matter jurisdiction. Okay. Well, tell me why. Because, Your Honor, the proceedings in the state court action related to multiple defendants, there were allegations that arose out of state court, state law claims. There was no Federal question, no Federal issue. The fact that there was an allegation that there were assets that were wrongly diverted by different defendants, the bankruptcy court ---- Issues, cases with state law issues end up in bankruptcy court all the time, right? Under certain circumstances, Your Honor. Right. But I think under this case in particular, the court was persuaded by the fact that the debtors' bankruptcy schedules made a representation that there were no assets to distribute. Right. But the bank ---- but I gather, at least the assertion is, that the lawyer was concerned that despite that schedule, there seemed to be some interaction going on in the state court that suggested that, in fact, it may have had assets because it may have been the alter ego of Fisher. I think that the position taken by the appellant was that there was some argument that because there was an allegation in the complaint in the state court action that there was an alter ego relationship between the debtor and the non-debtor that removed, that that then made the removal proper. Okay. And nobody's ever explained why that is not ---- that is frivolous as opposed to wrong. Because under the authorities of authorizing removal, the court had no subject matter jurisdiction. Why not? Why not at the level of frivolousness? There were no authorities, Your Honor, that were presented to the bankruptcy court to establish subject matter jurisdiction. It being a non-court proceeding, it being that it was ---- It was a non-court proceeding, but it was alleged to be a related proceeding. That's kind of amorphous. Yes, it is, Your Honor. And I think that the bankruptcy court saw this as an issue that was, at best, premature because the Chapter 7 trustee had not even ---- Okay. That's premature. That doesn't sound like frivolous. Well, I said, at best, Your Honor, that it was premature. But at worst, it was for an improper motive to delay the state court proceedings. What happened afterwards? I gather that the whole thing settled out pretty quickly. Is that right? Not pretty quickly, Your Honor, but you are correct that ultimately things did get resolved. But it took a lot of time and effort. And Fisher and the other entity did file bankruptcy as well. They ultimately did, Your Honor. Ultimately meaning pretty soon, within a couple months. Well, closer to the time of the sanctions motion, Your Honor. That was months later. Okay. But at the time that this was all before the bankruptcy court, there was only one debtor, and that was Fisher Financial. And the removal was by the non-debtors. And the state court proceeding had been delayed, as the judge found. And it appeared to him that this was a clearly improper purpose under both Rule 9011 and also under the court's inherent powers under Section 105, that the circumstances, the timing, all of the underlying circumstances that the judge reviewed as a whole, and the judge was in the perfect position to do so, being the judge that heard the motion to review everything that was before him to make the determination that under any alternative authority vested with the court to deter the kind of conduct that he thought was happening and to compensate the party who was harmed by such conduct, the delays that were caused, that they were real, that they were harmful, and that he was going to hold the appellant to the high standards of professionalism and ethics of an officer of the court. And the court did so properly under alternative authorities under the inherent powers given to the court as well as under Rule 9011. And the bankruptcy court is, oh, I suppose, constantly dealing with this same problem. I mean, the people looking for automatic stays and slowing the system down. I do think, Your Honor, that that is a situation that bankruptcy courts do face often, and that I think is why there are authorities vested with the bankruptcy court to control these proceedings. I had a hearing exam, and the doctor said I was fine. I can barely hear you. I apologize. I said you are correct, Your Honor. I believe that your statement is correct. The bankruptcy courts do often deal with such issues and that it is therefore vested within their powers to control the proceedings in the manner that they exercise their discretion to do so. Go ahead. Thank you. Thank you, Your Honor. Thank you. Thank you, Your Honors. Thank you, Your Honors. May it please the court, my name is Russell Gold, and I represent appellee Sue Cruz. Ms. Cruz joined in NIAF's motion for the sanctions that we're here for today. And, you know, Ms. Yee fully covered everything that was addressed. I would like to point out one thing that may not be clear. When Mr. Scott filed the notice of removal in November of 2008, Fisher Financial had already filed its petition for bankruptcy in September, two months earlier, in which any reasonable investigation would have found no assets in the company as represented under oath in the petition. Two months later, the timing just could not be what was a real problem for Judge Russell, waiting two months on the eve before the sanctions motions, the discovery motions. I gather Mr. Scott's explanation for that was that he was appointed, he became counsel very shortly, therefore. Is that right? I don't recall if that's the reason he gave. He mentioned he was under the gun and rushing, and that he could have gone to court if he really wanted to delay things, but that's truly not the case. You just can't want to walk to court and stop a motion from occurring the next day. What about the timing issue that Mr. Scott's attorney is propounding with regard to the or the combination of the timing issue and the lack of notice with regard to inherit sanctions? The timing with respect to the 9011? Well, as the Court noted, he had 26 days. He had a full safe harbor period in which to do, to remedy the problem. And what he chose to do instead was file an opposition, appear at the remand hearing and argue against it, which is squarely within the cases of a waiver like Gigante, where the Court in less than 21 days found the offending party had no interest and expressed no action designed to remedy the problem. With respect to the inherent authority, I'm sorry, Your Honor, what was the question? Well, if that's true, then the inherent authority doesn't matter. But the inherent, if apparently there was an alternative finding made because of the timing question. Yes. The Court also, it was also mentioned in my reply brief that, and the timing on this is important, too, because when the motion for sanctions is filed, none of the waiver activity actually occurs yet because you thought you served that before you actually filed. So after the motion was served, then we had this activity demonstrating waiver. And in the reply brief in response to Helen's arguments, NIA pointed out, well, they waived, number one. We did do, they did have the full benefit of the safe harbor. And the Court, in any event, under the same conduct, has the inherent authority to issue the sanctions order. And Judge Russell did indeed find grounds for the sanctions under all reasons, including the inherent authority. And if I understand the argument correctly, I see her time is up, Your Honor. May I finish? Sure. If I understand the argument correctly, the main gist of the argument is they didn't have due process. They didn't have due process notice that sanctions would be awarded under 105 rather than 9011. But the cases, including the DeVille case from this Court, said what notice is required is you have to have notice of the And, of course, the letters in November of 2008, the NEMAD motion, the notice from the Court of the OSC, and the sanctions motion all gave ample notice and opportunity to remove the defective deed. If you have any questions, thank you, Your Honor, for your time. Thank you. Thank you, Mr. Gold. And you don't want to say anything more, do you? No. All right. Thank you very much. And we'll recess until 9 a.m. tomorrow morning. All cases on this Court's calendar today are submitted. All rise. This Court is adjourned. Thank you.
judges: Pregerson, Fisher, Berzon